UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KRISTINA SINCLAIR,<br><br>Plaintiff,<br><br>-against-<br><br>CONOPCO, INC. d/b/a UNILEVER HOME & PERSONAL CARE USA,<br><br>Defendant. | No.:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Kristina Sinclair ("Plaintiff") makes the following allegations based upon information and belief, except as to those allegations specifically pertaining to Plaintiff and her counsel, which are based on personal knowledge. Plaintiff brings this action for restitution and monetary damages against defendant Conopco, Inc. d/b/a Unilever Home & Personal Care. ("Conopco" or "Unilever" or "Defendant"), demanding a trial by jury.

## NATURE OF THE ACTION

1. Plaintiff suffered hair loss after using Defendant's TRESemmé shampoo and/or conditioner containing a dangerous ingredient called DMDM hydantoin ("DMDM").

2. DMDM has long been associated with causing hair loss, thinning hair, dermatitis, and other adverse scalp reactions and has been the subject of numerous complaints and various lawsuits long before Plaintiff was injured.

3. This is an action for damages suffered by Plaintiff as a direct and proximate result of Defendant's negligent and wrongful conduct in connection with designing, developing,

manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and selling TRESemmé products (the "Products" or "TRESemmé Products").

4. The TRESemmé Products are marketed to customers—through labeling and other marketing—as containing a formula that will smooth hair, add softness and shine, and prevent frizzing and tangling. According to Defendant, the TRESemmé Products "deeply nourish," "gently cleanse," and "repair hair."

5. Contrary to Defendant's representations, the TRESemmé Products' formula contains DMDM, a chemical that releases formaldehyde. Formaldehyde is a carcinogen and has been shown to cause cancer and other harmful reactions when applied to the skin. The DMDM in Tresemme caused Plaintiff and hundreds of other people to experience hair loss, thinning hair, and scalp irritation even when applied properly.

6. DMDM has been used as a preservative in Defendant's TRESemmé Products for more than a decade; however, using DMDM as a preservative is an entirely unnecessary risk because various safer and affordable alternatives exist.

7. Defendant has long known that DMDM can cause hair loss, thinning hair, and scalp irritation. In 2012 and 2013, for example, users of Defendant's Suave Professionals Keratin Infusion 30 Day Smoothing Kit ("Suave Keratin Kit") brought lawsuits against Defendant, including in the Northern District of Illinois, alleging that the DMDM contained in the Suave Keratin Kit caused hair loss and scalp irritation. *See Reid, et al. v. Unilever United States, Inc., et al.*, No. 1:12-cv-06058 (N.D. Ill.) ("*Reid*"). The Suave Keratin Kit was recalled in 2012 following customer complaints that the product caused hair loss and scalp irritation and was wrongly advertised as formaldehyde-free. Defendant ultimately settled *Reid* and other class actions and paid more than 400 people for injuries, including hair loss, that they suffered after

using Defendant's product containing DMDM. Instead of stopping using DMDM, Defendant continued using DMDM in its products.

8. Users of TRESemmé Products have complained about the products to the company and online, including on online retailer sites such as Amazon and on product review websites. Those complaints include claims that the TRESemmé Products and Defendant's other products containing DMDM cause hair loss, thinning hair, shedding, and other injuries. Defendant knew or should have known about the consumer complaints because, upon information and belief, Defendant either received the complaints directly or regularly monitored online retailers and other online and social media sources where consumers were complaining about the products' harmful effects to their hair and scalp, including that the products cause hair loss.

9. Despite knowing the substantial risks associated with the TRESemmé Products and DMDM, including hair loss, thinning hair, and scalp irritation, Defendant manufactured, marketed, and sold TRESemmé Products containing DMDM even though the risks of using those TRESemmé Products containing DMDM outweighed any potential benefits. Moreover, Defendant delayed reformulating or manufacturing the TRESemmé Products with safer alternatives to DMDM even though doing so was affordable and sensible considering the substantial risks associated with DMDM.

10. Before Plaintiff was injured, Defendant had already reformulated some of its products to remove DMDM. After Plaintiff was injured, Defendant removed DMDM from its personal care products, replacing it with a safer alternative ingredient.

**THE PARTIES**

11. Plaintiff Kristina Sinclair is a citizen of the State of Massachusetts who has

resided in Massachusetts at all relevant times.

12. Defendant Unilever is a New York corporation with its principal place of business located at 1111 River Street, 8th Floor, Hoboken, New Jersey 07030. At all relevant times Defendant was present and doing business in the State of New Jersey. Defendant transacted, solicited, and conducted business in New Jersey and derived substantial revenue from such business. At all times relevant hereto, Defendant expected or should have expected that its acts would have consequences in New Jersey.

13. At all relevant times, Defendant manufactured, marketed, designed, promoted, and/or distributed the TRESemmé Products in this District and throughout the United States that injured Plaintiff.

**JURISDICTION AND VENUE**

14. This Court has original jurisdiction of this action pursuant to 28 U.S.C.§ 1332(a) because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different states. Plaintiff is a citizen of Massachusetts and Defendant is a citizen of New Jersey and New York.

15. Venue is properly set in this District pursuant to 28 U.S.C. § 1391(b) because Defendant transacts business within this District. Likewise, a substantial part of the events giving rise to the claim occurred within this District.

16. Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, the Court has personal jurisdiction over Defendant because Defendant is present in this District, such that requiring an appearance does not offend traditional notions of fair play and substantial justice.

17. Defendant, acting through its agents or apparent agents, transacted business

within the state; made contracts within the state; committed tortious acts within this state; and owned, used, or possessed real estate situated within this state and District.

18. Plaintiff's claims arise in part from conduct Defendant purposefully directed to this District. On information and belief, Defendant's TRESemmé products containing DMDM were sold at hundreds of local and national retailers in this District. On information and belief, Defendant avails itself of numerous advertising and promotional materials regarding its defective products specifically intended to reach consumers in this District, including advertisements on local television programs, advertisements on local radio broadcasts, advertisements on billboards , and advertisements in print publications delivered to consumers in this District.

19. Defendant regularly conducts or solicits business and derives substantial revenue from goods used or consumed in this District.

## FACTUAL ALLEGATIONS

### A. Unilever, the TRESemmé Products, and TRESemmé Product Representations

20. Unilever is the second largest seller in the world of shampoo, including the TRESemmé Products.

21. The TRESemmé Products are sold under the TRESemmé brand name directly from Defendant and through retailers. The TRESemmé Products contain keratin, a key structural protein found in hair.

22. Defendant promoted the TRESemmé Products through labeling and advertising channels, including representations written or approved by Unilever on retail websites and on Defendant's own websites. For instance, the rear labels of the TRESemmé Products direct consumers to tresemme.com "For more salon secrets from our stylists."

23. The TRESemmé Products' labeling and the TRESemmé Products' website do not

provide warnings regarding the TRESemmé Products, including any warnings disclosing to consumers the risk of DMDM (alone or in combination with other ingredients) or that the TRESemmé Products may cause hair loss, thinning hair, and scalp irritation when used properly. Additionally, the Products do not warn consumers that Unilever has received hundreds of reports of hair loss and hair damage associated with using Defendant's DMDM-containing products, including Tresemme. Upon information and belief, Defendant does not warn consumers about those risks through any means.

### B. The TRESemmé Products Contained or Contain DMDM, a Chemical That Can Cause Hair Loss, Dermatitis, and Scalp Irritation

24. There are various preservatives that are used in cosmetics and hair products, including formaldehyde donors such as DMDM. Formaldehyde donors (also called formaldehyde releasers or formaldehyde releasing agents) are chemical compounds that release formaldehyde. Formaldehyde donors are added to beauty products to prevent microbial growth and to extend shelf-life. The use of cosmetics containing formaldehyde donors is one of the leading ways human skin comes into contact with formaldehyde.

25. DMDM is an organic compound belonging to a class of compounds known as hydantoins. It is used in the cosmetics industry and was found in the TRESemmé Products during the time period at issue in this Complaint. DMDM releases formaldehyde and works as a preservative and increases shelf life by making the environment less favorable to microorganisms.

26. Research has long demonstrated the harmful effects of formaldehyde, formaldehyde donors like DMDM, and DMDM in particular, including:

> A 1988 patch-test study[1] examining the link between the presence of DMDM in cosmetics and adverse patients pre-sensitized to formaldehyde determined that "aqueous solutions of DMDM hydantoin, in concentrations comparable to those

---

1 A patch test is a diagnostic method used to determine which specific substances cause allergic inflammation of a patient's skin.

used in cosmetic products, contain enough free formaldehyde to cause dermatitis…," and that despite earlier conclusions that DMDM hydantoin is a safe cosmetic ingredient, "data suggest that an increase in the use of this preservative may also increase the risk of cosmetic dermatitis in patients allergic to formaldehyde." The authors further suggested that cosmetic products with formaldehyde releasing products should have warnings that the products "'contain formaldehyde'. . . whether present as free formaldehyde or bound by a donor."

The 2005-2006 North American Contact Dermatitis Group concluded DMDM was the 21st most common allergen according to patch test data collected from its members during that time. According to the National Center for Biotechnology Information, DMDMH contains a significant amount of formaldehyde and thus should be avoided in all formaldehyde allergic patients.

Formaldehyde is a known human carcinogen and is recognized as such by the United State National Toxicology Program and the International Agency for research on Cancer. In 2009, a review of the literature on occupational exposures and formaldehyde shows a link between formaldehyde and leukemia.

A 2010 study concluded that although "[i]t has been long accepted that formaldehyde-releaser sensitization is attributable to released formaldehyde . . . . clinical studies show the existence of patients allergic to formaldehyde-releasers but not to formaldehyde itself." That same study found DMDM hydantoin to be "reactive per se."

A 2015 study concluded "determined that longer storage time and higher temperature increase the amount of formaldehyde released from FRPs and could ultimately lead to more severe health concerns."

A 2017 statistical analysis of 32 years of data concerning allergic contact dermatitis observed a significant increase in positive reactions with formaldehyde and "that the rates of positive reactions to Dimethylol dimethyl (DMDM) hydantoin, remained unchanged."

DMDM is considered by the U.S. Food & Drug Administration (FDA) as one of the top allergens "that cause the most allergic reactions from the use of cosmetic products." According to the FDA, DMDM can "trigger the immune system to release chemical substances such as antibodies," resulting in reactions such as itchiness, red rashes on the skin, or more extreme reactions.

27. It is commonly understood that as a person becomes more exposed to an irritant such as DMDM over time the likelihood and severity of the reaction increase. This is called "irritant contact dermatitis" ("ICD") and it can occur in any person if the amount and duration of

irritant exposure are sufficient to cause direct epidermal keratinocyte damage.

28. The irritation of the scalp, including dermatitis, has been linked to hair brittleness and hair loss, with one 2018 study stating that "A number of observations have found that premature hair loss may be caused by the poor scalp health associated with either dandruff and seborrheic dermatitis, or psoriasis, indicating that the effect on the preemergent hair fiber may alter the anchoring force of the fiber with the follicle, as evidenced by an increased proportion both of catagen and telogen, and of dysplastic anagen hairs (anagen hairs devoid of hair root sheaths) in the trichogram (hair pluck)."

29. Since 2012 many companies have removed formaldehyde donors like DMDM from their cosmetics and shampoos. For instance, before Plaintiff was injured, Johnson & Johnson announced that it would "remove a host of potentially harmful chemicals, like formaldehyde, from its line of consumer products by the end of 2015." Other manufacturers also removed DMDM from their personal care products, including shampoos, choosing instead to replace DMDM with a safer alternative, such as sodium benzoate.

30. Some retailers, such as Whole Foods, put DMDM on their list of banned ingredients, refusing to sell products containing DMDM because of the dangers associated with that chemical.

31. Although other companies were removing DMDM from their products and Defendant removed DMDM from its products in certain countries outside the United States, Defendant continued to use DMDM in many of its products in the United States, including in some TRESemmé Products, stating on the Unilever website that "Regulators and scientists around the world agree that formaldehyde donors are safe at the levels used in home and beauty & personal care products."

32. Upon information and belief, despite touting the safety of formaldehyde donors like DMDM on its website, before Plaintiff was injured, Defendant removed formaldehyde donors in its baby care products

33. When Defendant was using DMDM in its TRESemmé Products, there were comparable and affordable alternatives to DMDM, including sodium benzoate, glyoxylic acid (or derivatives thereof); potassium sorbate and sorbic acid; citric acid and its salts; rosemary oil extract; neem oil extract; lavender oil; grapefruit seed extract; and vinegars.

34. Defendant has never warned consumers about the dangers of and possible reactions to DMDM or the TRESemmé Products, including the risk of dermatitis, scalp irritation, and hair loss and has only ever informed consumers that products containing DMDM are safe for use.

35. Defendant has failed to recall the TRESemmé Products, include a patch test or some other means to determine whether a consumer may be allergic to the product prior to use, or include an appropriate warning about DMDM, even after Defendant received hundreds of complaints alleging that the TRESemmé Products and similar products containing DMDM caused hair loss and other injuries.

### C. Defendant Has Known of the Harms of DMDM for Approximately a Decade Based on Prior Litigation and Ongoing Consumer Complaints

36. In 2012, consumers filed at least three class actions alleging that Defendant's Suave Keratin Kit containing DMDM caused significant hair loss. The cases were eventually settled in the Northern District of Illinois, where the first-filed case—*Reid*—was initiated. *See generally Reid*, Complaint (*Reid* Dkt. 1); *Reid* Settlement Agreement at ¶ 1 (*Reid* Dkt. 90-1).

37. Among other things, the plaintiff alleged that:

- "Unilever United States, Inc. ("Unilever") labeled, advertised, promoted and sold the Treatment targeting women who wanted smooth, shiny, manageable hair with no frizz. Through an extensive marketing campaign

and via its website and packaging, Defendant made a number of express warranties: that the Treatment was a Keratin-based smoothing treatment and not a toxic chemical relaxer, that its effects would last no longer than 30 days, that it contained No Formaldehyde, and that it was safe." *Id.* at ¶ 2.

- "In addition, the Defendant falsely claimed that the Treatment contained 'No Formaldehyde,' in all capital letters on the box cover, although the Treatment contains a chemical ingredient that is known to release Formaldehyde upon its use or application." *Id.* at ¶ 4.

- "Although it is not yet known what ingredient or combination of ingredients in the Treatment caused significant hair loss to Plaintiff and members of the Class, what is clear is that nowhere on the package labeling or on Defendant's websites or other marketing materials did Defendant warn Plaintiff and members of the Class that they were at risk of significant hair loss upon proper application of the Treatment" *Id.* at ¶ 6.

- "Defendant failed to do so even though Defendant knew, before or almost immediately upon introduction of the Product in late 2011, that consumers were complaining that the Treatment caused significant hair loss (among other adverse effects, such as chemical burns, hair breakage and hair discoloration)." ¶ 7.

38. On July 9, 2014, the United States District Court, Northern District of Illinois entered an Order approving the class-wide settlement of the *Reid* case for $10,250,000. *See* Settlement Agreement at ¶ 4 (Dkt. 90-1); Final Approval Order (Dkt. 143). Defendant set aside $10,000,000 to resolve hair loss personal injury claims from people who had use the DMDM-containing Suave product. More than 600 people who had been injured and experienced hair loss after using the DMDM-containing Suave product submitted injury claims to that settlement fund.

39. Research has shown the dangers of DMDM since at least the 1970s. However, even if Defendant was not aware of the dangers of DMDM from its business operations, or its own research, at a minimum, Defendant has been on notice of the dangers of DMDM in hair care products since the Suave Keratin lawsuits were filed in 2012 and since more than 600 people submitted injury claims in connection with the personal injury settlements in the Reid class action.

40. Besides the Suave Keratin Treatment class action lawsuits filed beginning in 2012, consumers have been complaining about the harmful effects of the Defendant's DMDM-containing products, including the TRESemmé Products, since at least 2012 on various online sources, including on retailer websites and blogs.

41. A sample of complaints posted on Amazon.com details numerous reports of scalp injury and hair loss:

- Star rating unknown. **BEWARE**
- Reviewed in the United States on July 28, 2013
- "I tried this shampoo for two weeks. I wash my hair about three times a week. In that short amount of time, I lost ALOT of hair. I have thick, wavy and used to have TONS of hair. **After using this product, I noticed a huge difference in the amount of hair I was losing daily.** It is now very dry, brittle and my scalp started to itch. I was using Loreal sulfate free smoothing shampoo and conditioner before this. I wanted to try something different as I flat iron my hair quite frequently. Boy do I regret it! **All I can say is BEWARE. It does smoothe your hair by thinning it out! Pay close attention to the amount of hair you are losing in the shower and throughout the day! It DOES matter**!" (emphasis supplied)

- 1.0 out of 5 Stars. **Hair shedding**
- Reviewed in the United States on November 23, 2013
- "This product seemed find [sic] at first. I'm trying to grow my hair out and I thought that this would help keep it healthy and was doing everything I was told to do but still **my hair was coming out in chunks**. I changed shampoos and as soon as I did my hair wasn't Coming out in chunks. I ran out of shampoo so I was forced to go back to this one and **My hair began to shed horridly again**. I threw this over my balcony."

- 2.0 out of 5 stars. **Too many sensitivies (sic)**
- Reviewed in the United States on August 6, 2014.

  It occurred to me that the only thing else it could be would be an allergic reaction. Like several others on here I am not sensitive to things in general. Maybe 1 medication and that's it. I think it just took me longer to realize what was doing it because of my not being sensitive. I have washed my hair with another shampoo tonight and hope that it will gradually fade away. I was becoming concerned because the itching was focused in 3 spots on my head and with any great amount of itching I'm sure I will eventually scratch bald spots there.

  The smoothing effect was minimal and I was just trying to use it up. My hair is

between curly and wavy and was bra strap length. **I had begun to have lots of hair fall, to the point of it being all over the house and I assumed it was because my hair was so long**. I have since cut it because hair everywhere disgusts me and I am now wondering it this was caused by this shampoo as well (emphasis supplied).

- 1.0 out of 5 stars. **garbage!!!!**
- Reviewed in the United States on January 14, 2015
- "I have kinky curly hair and they were giving this shampoo and its conditioner out at my job. And I am appalled that they would even think this stuff was good enough to give out. My hair was nice and soft before this went in. It completely stripped my hair of its natural oils . . . **My hair started falling out immediately**. I had to pile in the shampoo to undo the mess it did to my hair. WOW!!!" (emphasis supplied).

- 1.0 out of 5 stars. **Causes Significant Hair Loss - Do not buy!**
- Reviewed in the United States on July 10, 2015
- "Absolutely horrible shampoo! At first I got it because the name of it intrigued me. I have thin, dry, wavy hair and was looking for something that would help control my hair's extremely frizzy texture. At first I loved this shampoo and the scent is really nice too. **However, within a couple weeks of use, I noticed chunks of my hair falling out. I did some research on this shampoo and noticed others who said similar things after trying it. I'm so disappointed because this is thinning out my already thin hair. Seriously this causes a lot of hair loss, do not buy**!" (emphasis supplied)

- 1.0 out of 5 stars. **I don't recommend this to anyone**
- Reviewed in the United States on July 20, 2016
- "I don't recommend this to anyone. **My hair started falling down after using this shampoo**. waste of money. I am going to throw it to the dustbin. Please don't buy if you don't want your hair to be fallen." (emphasis supplied)

- 1.0 out of 5 stars. **thinning and missing hair.**
- Reviewed in the United States on September 1, 2016
- "used this product for about 1 month. I have fine hair that is long and I haven't dyed it in 1.5 years. I started noticing my hair wasn't styling quite the same as it always had and it was feeling greasy by the afternoon after just washing it in the morning. **Then I noticed my hair was thinning and sections of my hair lost so much that it barely covered the scalp underneath**. I switch shampoos frequently and even had success with TRESemmé moisture rich shampoo in the past. Nothing else about my hair or health routine changed in the month that I used this product. It was a disappointment." (emphasis supplied)

- 2.0 out of 5 stars **Causes problems**
- Reviewed in the United States on August 23, 2018
- "Horrible products. **The shampoo for color treated hair makes my hair pull**

**out and my scalp itches**." (emphasis supplied)[2]

42. Consumers also posted similar complaints regarding TRESemmé on PRODUCTREVIEW.COM:

**AWFUL!!!!**
1.0 out of 5 stars.
Published 4 years ago by Lee
"I used these products and **they made me lose more hair** and my scalp was so itchy ( wake me up in the middle of the night itchy) I thought I had head lice. So I figured I was allergic and stopped using it.... my daughter started to use it so we didn't waste it. She had the same reaction as well as her friends that use it. We are throwing it away right now." (emphasis supplied).

**Worst i've used so far**
1.0 out of 5 stars
Published 3 years ago by Kell
"I have to usually have to switch shampoos every three months or so i thought tresemme would be the exception but i was wrong not only did it make my scalp itchy as hell it also **has been making my hair fall out so now on the sides it looks like it's thinning** never buying this product again!" (emphasis supplied)

**My hair is falling out!**
1.0 out of 5 stars
Published 4 years ago by Gina
**"I've been using this product for roughly 3 months. I couldn't figure out why I started losing so much hair. Well I finally came to realize it's this.** Thanks TRESemmé!" (emphasis supplied).

**"OMFG TEARS!"**
1.0 out of 5 stars
Published 2 years ago from Shomari
"**This product caused a lot of hair loss for me. I've never had anything like this happen to me, I literally have a big bald spot in the middle of my head!** And the shedding will not stop, I've only used this product once, about four days ago. This is the worst product I have ever used in my LIFE!!!" (emphasis supplied).

**"Made my hair fall out within a week!!"**
1.0 out of stars
Published 2 years ago by Kat
Bought this because their classic TRESemmé (black bottle) has always been good. Well, after a week my hair was literally falling out...CLUMPS in my hand and

[2] Reviews sampled from https://www.amazon.com/TRESemm%C3%A9-Shampoo-Keratin-Smooth-22/dp/B00AO4E9E0 (last visited on March 29, 2021)

> clogged my shower 3 times in one shower. Also made my hair staticky and dry feeling. I'm not sure I'll ever use their product again!! [3]

43. Thus, Defendant was on notice of the problems with the TRESemmé Products containing DMDM since at least 2012 as evidenced by various litigation and consumer complaints either made directly to Defendant or, upon information and belief, monitored by Defendant as part of its business operations.

**D. Plaintiff Used the TRESemmé Products and Suffered Hair Loss**

44. Plaintiff Kristina Sinclair purchased TRESemmé Keratin Smooth Color Safe shampoo and conditioner containing DMDM and was injured after using the product.

45. After she began using Defendant's product containing DMDM, Plaintiff Sinclair began experiencing scalp irritation, hair loss, and breakage.

46. Plaintiff Sinclair's hair loss increased in severity and Plaintiff's hair would fall out in clumps after she washed her hair with TRESemmé Products.

47. Plaintiff Sinclair subsequently became aware that the TRESemmé Products were associated with hair loss and breakage, and she stopped using TRESemmé Products. Since Plaintiff stopped using TRESemmé Products containing DMDM, her hair loss has subsided.

**<u>TOLLING OF THE STATUE OF LIMITATIONS</u>**

**A. <u>Fraudulent Concealment Tolling</u>**

48. Defendant has known of the dangers of DMDM since at least late 2012, and has concealed from, or failed to, notify Plaintiff and the public of the full and complete nature of the dangers, including skin irritation and hair loss, even after receiving numerous reports of injuries

---

[3] Reviews sampled from https://www.productreview.com.au/listings/tresemme-keratin-smooth-shampoo-and-conditioner?rating=1

from consumers and being sued by consumers for skin injuries and hair loss. Defendant continues to conceal the dangers to this day.

49. Any applicable statute of limitation has been tolled by Defendant's knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

**B. Estoppel**

50. Defendant was, and is, under a continuous duty to disclose to Plaintiff and the public the true risks of skin irritation and hair loss but has actively concealed – and continues to conceal – the true character, quality, and nature of the risk and knowingly made false representations about the risks to consumers.

51. Plaintiff and the public reasonably relied upon Defendant's knowing and affirmative representations and/or active concealment of these facts during the relevant period.

52. Based on the foregoing, Defendant is estopped from relying on any statutes of limitation in defense of this action.

**C. Discovery Rule**

53. The causes of action alleged herein did not accrue until Plaintiff discovered that her skin irritation and hair loss was caused by the dangerous ingredients in Defendant's product.

54. The defect existed when Defendant manufactured and sold the products. However, Plaintiff had no realistic ability to discern that the products were defective until – at the earliest – after she learned about lawsuits alleging that the products caused skin irritation and hair loss. Even then, Plaintiff had no reason to know the itching, dermatitis, and hair loss were caused by a defect in the product because of Defendant's active concealment of the risks and of the prior reports of irritation and hair loss.

55. Thus, Plaintiff was not reasonably able to discover the defect until after the personal injury hair loss action was filed against Defendant, despite her exercise of due diligence, and her causes of action did not accrue until, at earliest, the Court in the action dismissed the action, the time to appeal in that action expired.

**D. The Statute of Limitations Was Tolled by the Pendency of a Proposed Class Action in Which Plaintiff Was A Member of the Proposed Class**

56. The statute of limitations governing Plaintiff's claims was tolled during the pendency of a prior, related putative class action pursuant to the class action tolling doctrine established in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) and its progeny. On December 6, 2021, a class action complaint was filed that included plaintiff in the class and that asserted similar claims to those Plaintiff assert here. *Candelaria v Conopco, Inc. d/b/a Unilever Home & Personal Care USA*, Case No. 21-cv-06760-KAM-PK (E.D.N.Y.) (the "Class Action"). The Class Action asserted identical underlying factual allegations and legal claims against as those set forth in this Complaint.

57. Plaintiff in this case fell squarely within the scope of the proposed class definition in the *Candelaria* case. As a putative class member, Plaintiff was a party to the Class Action, and the commencement of that action put Defendant on timely notice of the substantive claims being brought against it, as well as the identities of the potential plaintiff. Moreover, in the course of the Class Action, Plaintiff identified Plaintiff to Defendant as being injured by using Tresemme containing DMDM.

58. Consequently, the running of the applicable statute of limitations as to Plaintiff's claims was suspended and tolled from the date the Class Action was filed. Because the limitations period was paused during this entire interval, Plaintiff's claims presented herein are timely.

## COUNT I

## STRICT PRODUCT LIABILITY: MANUFACTURING DEFECT

59. Plaintiff hereby incorporates by reference the paragraphs above as if fully set forth herein.

60. Defendant manufactured, supplied, promoted, marketed, distributed and/or sold TRESemmé Products containing DMDM.

61. As the manufacturer, supplier, promoter, distributor, marketer and seller of TRESemmé Products, Defendant placed into the stream of commerce a product that was dangerous and defective when used for its intended purpose or its reasonably intended purpose.

62. The TRESemmé Products which were manufactured, supplied, promoted, distributed, and sold by Defendant were defective and unreasonably dangerous when Defendant placed them into the steam of commerce.

63. Plaintiff used TRESemmé for the purpose and in the manner normally intended by Defendant.

64. TRESemmé caused Plaintiff's injuries, including hair loss and thinning hair, and Defendant was a substantial factor in causing that harm.

65. Additional information concerning any defective manufacture is in the exclusive custody and control of Defendant.

66. As a direct and proximate result of the foregoing, Plaintiff is entitled to damages from Defendant. Furthermore, Defendant's actions and omissions as identified in this Complaint constitute a flagrant disregard for human life.

**COUNT II**
**STRICT PRODUCTS LIABILITY: DESIGN DEFECT**

67. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows.

68. Defendant is the manufacturer, designer, distributor, seller, and/or supplier of hair care products, including TRESemmé containing DMDM.

69. The TRESemmé manufactured and supplied by Defendant was defective in design or formulation in that, when it left the hands of the Defendant, the foreseeable risks of the product exceeded the benefits associated with its design or formulation, and it was more dangerous than an ordinary consumer would expect.

70. The TRESemmé that Plaintiff used had not been materially altered or modified prior to its use.

71. TRESemmé is also defectively designed because it contains the unreasonably dangerous ingredient DMDM, though there are reasonably safer and effective alternatives that do not include DMDM.

72. TRESemmé is also defectively designed because its cautions and/or warnings are inadequate, as set forth in the Complaint, for the following reasons, among others:

a. The TRESemmé Products fail to warn of the rates of adverse reaction among the general population;

b. The TRESemmé Products fail to warn that the product can cause hair loss, thinning, and dermatitis and that Defendant had received numerous reports of hair loss and hair damage associated with its DMDM-containing products;

c. Defendant minimized and downplayed the risks associated with TRESemmé hair products containing DMDM, including the risk of hair loss and thinning hair;

d. The TRESemmé Products fail to advise their users of the benefits of undergoing a patch test conducted by a medical professional; and

e. TRESemmé products fail to display and advise of the product's risks, proper use, or the need to conduct a patch test in an effective and reasonable manner.

73. By marketing a product designed such that it was not reasonably safe, despite the availability of safer alternatives, and failing to sufficiently warn users of the dangers, Defendant was a substantial factor in causing Plaintiff's injuries.

74**.** As a direct and proximate result of Plaintiff's use of TRESemmé containing DMDM manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by Defendant, Plaintiff suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

75. As a direct and proximate result of the foregoing, Plaintiff is entitled to damages. Further, Defendant's actions and omissions as identified in this Complaint constitute a flagrant disregard for human life.

**COUNT III**
**STRICT PRODUCTS LIABILITY: FAILURE TO PROVIDE ADEQUATE WARNING**

76. As a direct and proximate result of the foregoing, Plaintiff is entitled to damages. Further, Defendant's actions and omissions as identified in this Complaint constitute a flagrant disregard for human life.

77. TRESemmé is also defectively designed because its cautions and/or warnings are inadequate, as set forth in the Complaint, for the following reasons, among others:

78. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows.

79. The TRESemmé manufactured and supplied by Defendant was defective due to inadequate warnings or instructions because Defendant knew or should have known that the product created significant risks of serious bodily harm to consumers, but Defendant failed to adequately warn consumers of such risks.

80. Defendant knew or, in the exercise of reasonable care, should have known that hair care products such as TRESemmé containing DMDM that are marketed to be used repeatedly as a cosmetic hair product present a risk of severe reactions, including hair loss, thinning hair, dermatitis, and other adverse reactions.

81. Defendant failed to provide the warnings or instructions that a manufacturer exercising reasonable care would have provided concerning the risk of injuries from use and repeated use of TRESemmé containing DMDM in light of the likelihood that the product would cause the harm Plaintiff experienced and in light of the likely seriousness of that harm.

82. Defendant, as the manufacturer of TRESemmé, is held to the level of knowledge of an expert in the field of that type of hair care product and had a duty to warn consumers of the dangers associated with TRESemmé but failed to do so.

83. Defendant failed to reasonably or adequately warn users of the risks of TRESemmé containing DMDM for the following reasons, among others:

a. Defendant minimized and downplayed those risks associated with TRESemmé containing DMDM that it chose to disclose;

b. Defendant received numerous reports of people suffering hair loss, thinning hair, and dermatitis, after using TRESemmé but Defendant failed to warn

Plaintiff about the reports and about the possibility of being injured by using TRESemmé; and

c. The TRESemmé Products fail to display and advise of the product's risks, proper use, or need to conduct a patch test in an effective and reasonable manner.

84. The TRESemmé manufactured and supplied by Defendant was defective due to inadequate post-marketing warnings or instructions because, after Defendant knew or should have known of the risk of serious bodily harm, as set forth herein, from the use of the TRESemmé Product, Defendant failed to provide an adequate warning to consumers of the product, knowing the product could cause serious injury as set forth herein, including hair loss.

85. Plaintiff read and followed the deficient directions that were provided with Defendant's TRESemmé Products. Defendant's inadequate directions and packaging were a substantial factor in causing Plaintiff's injuries. As a direct and proximate result of Plaintiff's use of TRESemmé as designed, sold, supplied, marketed, and introduced into the stream of commerce by Defendant, Plaintiff suffered harm and damages and will continue to suffer such harm and damages in the future.

86. As a result of Defendant's failure to adequately warn Plaintiff, Plaintiff is entitled to damages from Defendant. Further, Defendant's actions and omissions as identified in this Complaint constitute a flagrant disregard for human life.

## COUNT IV
## NEGLIGENCE

87. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows.

88. Defendant had a duty to exercise reasonable case in designing, manufacturing, testing, marketing, and distributing into the stream of commerce the TRESemmé Products containing DMDM, including a duty to insure that TRESemmé did not pose a significantly increased risk of injury to Plaintiff and other consumers.

89. Defendant failed to exercise reasonable care in designing, manufacturing, testing, marketing and distributing into the stream of commerce the TRESemmé Products containing DMDM. Defendant knew or should have known that TRESemmé is marketed to be used on a regular basis to improve cosmetic appearance and presents a risk of severe injuries, including hair loss, thinning hair, dermatitis, and other injuries, therefore giving rise to pain and suffering, debilitation, and the need for medical treatment and therefore was not safe for use by Plaintiff or other consumers.

90. Defendant failed to exercise reasonable care by failing to sufficiently warn consumers of the risks associated with the product.

91. Although Defendant knew or should have known that TRESemmé containing DMDM could cause severe reactions in consumers, such as hair loss, and therefore give rise to pain and suffering, debilitation, and the need for medical treatment, Defendant continued to market TRESemmé containing DMDM as safe and effective.

92. Although Defendant knew or should have known that TRESemmé containing DMDM could cause hair loss and severe reactions in consumers and therefore give rise to pain and suffering, debilitation, and the need for medical treatment, Defendant failed to use ordinary care in warning Plaintiff and other consumers these risks.

93. As a direct and proximate result of Defendant's negligence, Plaintiff has suffered significant damages, including physical injury, pain and suffering and will continue to suffer such damages in the future.

94. Defendant's actions and omissions were malicious, wanton, oppressive, and/or reckless.

**JURY TRIAL DEMAND**

95. Plaintiff demands a jury trial as to all claims and issues triable of right by a jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Honorable Court do the following:

A. Award Plaintiff compensatory and punitive damages in an amount to be determined by the trier of fact;

B. Award Plaintiff the costs, prejudgment interest, and attorney fees of this action; and

C. Grant such other relief as is just and proper.

DATED: New York, New York
October 19, 2026

Respectfully submitted,

SQUITIERI & FEARON, LLP

By: /s/ Stephen J. Fearon, Jr.
Stephen J. Fearon, Jr.
2600 Kennedy Boulevard
Jersey City, New Jersey 07306
P: (212) 421-6492
F. (212) 421-6553
Email: Stephen@sfclasslaw.com

-and-
205 Hudson Street
7th Floor
New York, New York 10013

P: (212) 421-6492
F. (212) 421-6553
Email: Stephen@sfclasslaw.com

**Attorneys for Plaintiff**